Good morning, Your Honors. My name is Raymond Deary, and I represent my client, Ronald Bruce Adams, in his appeal. I'd like to reserve three minutes for rebuttal, if I may. Your Honors, this is a case that poses the question about whether or not a district court can find a defendant based upon his socioeconomic status, in this case, his wealth. The government has not submitted a single case that suggests or allows, authorizes in any way, that the wealth of an individual defendant should be the basis of a fine. The government, in their brief, suggests that under 18 U.S.C. section 3572, that the reference to the court about the amount of the fine is tantamount to allowing a court to look at a defendant's resources and then determining the amount of the fine. Several circuits, including the Fourth Circuit, the Fifth Circuit, the Second Circuit, D.C. Circuit, have all spoken on the issue of whether or not a defendant's socioeconomic status, rich or poor, should be appropriate. And these courts say no. How do you reconcile 3572A plus the guidelines which expressly require the court to look at the defendant's income, earning capacity, and financial resources? I mean, that's a statutory requirement for the court. Those cases you're mentioning are departure cases, which in the Ninth Circuit are no longer relevant because we only consider the ultimate sentence for reasonableness. Right. Well, first of all, I believe the departure aspect of those cases are a distinction without a difference. The point of those cases is you can't base a fine on a person's socioeconomic status. Congress said that in the Painter case directly. What do you base it on, then? Pardon me? What do you base it on? One guy's a millionaire, one guy's got $10 in his pocket. You base it on the crime, Your Honor. That's exactly what — How much? Give me the illustration in this case. One guy's got a million dollars, one guy's got $10 in his pocket. What should the fine be in this case? Well, again, the issue is — Give me a figure. That's all I want to come to. All I want from you is a figure. That's what I would — that's what I would suggest that the district court didn't do, Your Honor. The district court — I'm asking you, what did you say the judge should give? In this case? No, in the case of a million and a $10 bill. I don't — I believe it needs to be based upon the facts of the criminal — $10 fine would be enough for a millionaire? Again, I don't think Congress has allowed you to look at this. Yes or no? I don't believe that that would be an appropriate fine. Would that be inappropriate? Would be an appropriate fine? I don't believe that Congress has allowed or authorized the court to first look and see how much the person's wealth or socioeconomic status is. I think that's exactly what Congress is prohibiting. They're saying that that's not an appropriate basis for a fine. And that's the starting point. Getting back to — Now, the word socioeconomic is not equivalent to wealth. I mean, if the Congress had wanted to preclude courts from just looking at wealth, they would have used that word. The word socioeconomic means something different, and we need to reconcile those two statutes. How do you suggest we reconcile them? Well, again, I rely upon the Painter case from the Fifth Circuit that said socioeconomic status and wealth are synonymous. Now, in the departure context, and at least one of those cases does explain, the reason that for departure you don't look at anything that was already considered under the guidelines, and that's when you would do a departure. And so at least one of those courts was saying since the sentencing guidelines already require the court to look at the financial ability to pay, you don't look at it again for a departure. So I guess I'm not understanding how you can say the departure cases are not distinguishable from this one. Well, again, they're certainly distinguishable in the sense that this is not a departure case. Right. But my point is basing a person's sentence on the wealth, which I believe the transcript from the district court shows, that's impermissible, whether it's in the departure setting or not. Although Congress expressly requires the court to consider it? Again, Congress expressly permits and requires the court to do that for determining the ability to pay. It says, and the amount. Well, again, Painter directly referenced that. Obviously, you would have to determine the amount of the fine. If the court wants to fine someone $10 million and the person's income assets are, say, $5,000, that's obviously relevant in determining the person's ability to pay. And that's exactly what Painter said. You look at that only to determine the ability to pay. Here, the district court flipped it on its head. The district court did exactly the opposite. They said, well, what should we fine him? Well, let's look to see how much his net worth is. And that's exactly what Painter says and Graham says is inappropriate. And I suggest that Congress says it's inappropriate. Obviously, if this person we're dealing with a situation where the person is wealthy, flip it on its head if the person is poor. And we said, well, he's poor, and therefore, we should do something in light of the fact that he's poor. It's the same basis. You can't start from the premise that the socioeconomic status, in this case wealth, determines the fine. No, it doesn't. Socioeconomic status doesn't mean wealth. You can look at a person's so-called socioeconomic status and say, well, here's a person who has achieved importance in this community, but the person doesn't have very much money. And that's what they're talking about. That's what socio means. Well, again, Your Honor, I would go. I mean, would you, if you had two defendants and both of them were equally culpable and they were co-defendants, and as Judge Ferguson example, if one had $10 of net worth and the other had $10 million of net worth, would you find them the same? Again, I believe Congress ---- I'm asking you, would you find them the same? I think what Congress has said is it's based upon the crime, not the person's wealth. They did the same crime. Then I would ---- Same crime. You're not listening to my hypothetical. Assuming the first ---- Same crime. They worked together. They held hands while they committed the crime. They were identical twins. One of them is worth $10 million. The other is worth $10. Do they get the same fine? Again, Your Honor, assuming the both of them ---- Yeah, assume all of that. Assuming they both have the ability to pay. And I would agree with you. Assume they're both lawyers, too. All right. They both get the same. What if it's not me? No, no, no. Went to the same law school. Went to the same law school. They were tied for number one in the class. It says a lot about DNA, Your Honor. I believe that Congress is saying the fine should be the same. The fine is based upon, assuming they both have the same ability to pay ---- Yeah, everything's the same. They're identical twins. Then you base it upon criminal conduct. They're Siamese twins. So they take $10 from the poor guy. They can take 10 from the other. We're changing the facts here. Mr. Adams forfeited over 75 acres of land. He ---- I'm just giving you a little hypothetical. I understand, Your Honor. Yeah. Okay. I don't ---- I believe I'd like to reserve some time for a moment. Unless this is the seven minutes that I have, I'd like to reserve a little bit of time. So thank you. You've got 36 seconds, I think. Yeah. Thank you. Okay. So what is socioeconomic status? It's more than wealth, Your Honor. What we have here is an issue of reconciling the very general prohibition that says you can't base a punishment on race, age, gender, socioeconomic status. And then you have these very particular provisions in both the guidelines and 3572 that say here's how we figure out a fine. We look at the amounts you can pay. We try to make it punitive. We look at the cost of incarceration. We try to find if there's any gain or loss from your criminal activity. There's a whole list of things. And Judge Lovell scrupulously followed 3572, and he scrupulously followed the guidelines, and all the defense has is this general, well, it was because of socioeconomic status. No, it wasn't. It was because he had a large marijuana grow operation. That's why he's being punished. And the only consideration of his wealth is in determining what amount of fine can he pay, what amount will be punitive. And obviously the defendant considers this amount punitive. And just to address this question of reconciliation, the United States in no way thinks that this case, in order to rule for the United States, requires any conflict with the Fifth Circuit's decision in Painter or the Fourth Circuit's decision in Graham. Far from it. For the reasons that have already been discussed, those cases involve departures. And the courts were very clear about saying when we're within the guidelines, when we're following the guidelines, the wealth of the defendant is taken into account. So you can't tag him higher because you say, oh, you're even wealthier or you have an even higher socioeconomic status. As I say, counsel mentioned the Second Circuit case, Barone. I think it's a 1989 case. The individual's a judge or I think he's a part-time judge or something like that. And Judge Briant in the Southern District of New York said, you know, you have a special trust, so I'm going to upwardly depart based on the wrong to the community and whatnot. And the Second Circuit said, well, hold on a second. That seems to be taking into account socioeconomic status. But where you're squarely within the guidelines in the statute, you're doing exactly what Congress told the court to do. And he was not ñ nobody went outside the statute or outside the guidelines because he was wealthy, much less for other indicia of socioeconomic status. If there's no questions, I'll sit down. All right. You're going to yield 7 minutes and 16 seconds to the debate. Thank you again, Your Honors. What the government is promulgating is that as long as it's within the appropriate guideline or statutory range, you can look at a person's socioeconomic status and determine the sentence. I don't believe that's what Congress intended. I don't believe that that position would be consistent with the Fourth or the Fifth Circuit or the Second Circuit. I believe that it's simply a question of jurisprudence. Are you allowed to say, okay, here's a gentleman, he committed a crime. You're saying that you can't fine rich people any more than you could fine a poor person. That's not what I'm saying, Your Honor. What are you saying, then? I'm saying that you base the fine on the criminal conduct, not who the person is in our society, wealthy or poor. This person is wealthy. Just by committing a crime does not mean, okay, you've committed a crime, and now we can fine you anywhere within the statutory parameters. That's what happened in this case. That's inappropriate. The Court said he's worth $8 million, and therefore I'm going to sock it to him. Congress says that that's not appropriate. The guidelines say that that's not appropriate. The Fourth Circuit and the Fifth Circuit directly said it was inappropriate. Pardon me? What would have been appropriate? If the Court said — No, no. You tell me. You tell me. Just give me a figure. Again, Your Honor, any figure just — Just give me the figure, please. Well, I — Never mind. You're up there. You've been hearing this case for a long time. If you can't answer my question, say so. Well, again, I — what I'm — what I am saying is that you can't base it upon what the person's worth is. That's the point of the case. Just give us a figure. Well, I can give you a figure, but it's going to be as random as the figure that the district court came up with. If you're going to base it upon, in this case, the profits, there was no evidence of profits. My client also showed that all of his assets that he obtained were assets he obtained long before any criminal conduct was being investigated. The range was, what, $4,000 to $2 million? Well — That was the range of what the fine could be within the statute and the guidelines. Sure. I mean, I think it — Per count. Right. I think 4,000 guidelines low and up to the statutory $2 million per count. Yes. Right. So the court went through the factors in 3572 and came up with a figure. And I guess what Judge Ferguson is asking is, if that was wrong, if the court's reasoning was wrong, what should the court's reasoning have been? And perhaps you haven't done that calculation in your own head, so you don't have a response. Well, my response would be, if the court was calculating it based upon the cost in terms of incarceration, that was $137,000. But in this case, the forfeiture was, I believe, approximately $107,000. So certainly a fine of $30,000 to cover the cost of incarceration, I think that would be completely appropriate. That's a figure that's — but again, the court — the district court doesn't go through that analysis. Let me ask you a question about another argument you raised, if you don't mind. Based on you said $30,000 to cover the cost of incarceration, one of the arguments I thought I understood you to be making was that there needed to be a link between the fine and the ill-gotten gains, I think was the word. Are you saying that that, as a matter of law, the fine has to be based on what the profits were from the operation? Or are you challenging the reasonableness of the judge's sentence? Well, again, my appeal was based upon three issues. We've discussed the first one mostly. Second of all, we believe under Booker and its progeny that this is an unreasonable sentence. The — my client was 65 years old, had no prior criminal history whatsoever. We showed all of his assets were obtained without relationship to any criminal conduct. And he forfeited a substantial amount of property and money. And then on top of that, he's subject to a mandatory minimum of five years, even though he has no criminal history. We say you take that in total, and then you fine him on top of that with $400,000. We believe that that's unreasonable. Now, are you aware that the Ninth Circuit has two cases, en banc as a voluntary, that are looking at reasonableness under the guidelines? And, of course, the Supreme Court has a case pending, only one now. Rita, is this something that we would need to defer until the results of our en banc case? Well, I certainly think that would be appropriate for that particular issue. Where's your client now? He's insured in Oregon at the Federal Correctional Institution. All right. I think I've exhausted all of the inquiries of the panel. I'd be happy to answer any other questions you may have. Let me put the setting in a different position. Suppose we reverse. Okay. And it goes back. Okay. The government gets up and says $8 million. What's your figure? I'm sorry. The government comes up. What would your figure be? Well, again, the government recommended no fine. I understand. Okay. What would your position be? Well, again, our position. How about your dollars and cents? Well, we're going to argue again that given the fact that Mr. Abzis. Oh, give me it. Give me it. Give me it. We would argue no fine, Your Honor. No fine. Okay. In light of the forfeiture that he's agreed to. Okay. Okay. Thank you, Your Honor. Thank you.
judges: Pregerson, Ferguson, Ikuta